J-S28007-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| FRANTZ BER GOODRIDGE | : | |
| Appellant | : | No. 17 EDA 2024 |

Appeal from the Judgment of Sentence Entered October 30, 2023
In the Court of Common Pleas of Monroe County
Criminal Division at No: CP-45-CR-0002591-2021

BEFORE: STABILE, J., MURRAY, J., and LANE, J.

MEMORANDUM BY STABILE, J.: **FILED SEPTEMBER 10, 2024**

Appellant, Frantz Ber Goodridge, appeals from his judgment of sentence of 6½-28 years' imprisonment for corruption of minors, selling or furnishing liquor to minors, aggravated indecent assault, indecent assault, and unlawful contact with a minor. Appellant argues that the evidence was insufficient to sustain his convictions and that the verdict is against the weight of the evidence. We affirm.

The trial court summarized the evidence against Appellant as follows:

In the current case, the incident occurred on June 18, 2021. Pivotal evidence presented at [Appellant]'s March 23-24, 2023 jury trial included that there was corroboration between the testimony of both the then 14 year old children (K.C. and R.H.) as to what was done to them by the 25 year old [Appellant] on June 18, 2021. Jessica (K.C.'s mother) testified about her discovery of her daughter's condition immediately after the incident. Additionally, the day after the incident, [Appellant] made statements to the police about having met up with the girls, and after his initial denials, he then admitted and that he had provided K.C. and R.H. with vodka and touched them inappropriately.

Jessica testified that her daughter first had gone to bed, and that she then went to bed between 11pm and 12am, to be awakened by a noise around 3am. Jessica said she found K.C. exhibiting visible signs of intoxication, and K.C. also had leaves in her hair as well as her leg was cold like she had been outside. The mom had K.C. take a shower with assistance, but K.C. "was still pretty incoherent, but kind of babbling."

Therefore, Jessica took K.C. to the hospital for evaluation, not knowing the full extent of what had transpired except that K.C. said she and R.H. had met a boy (that being [Appellant]) at a stop-sign. Later in the day, Jessica and K.C. went to R.H.'s house where the mom learned that the boy was in his twenties, so she went to the police.

Jessica testified that the police went to talk to [Appellant], and later told her that [Appellant] had admitted to the allegations when questioned.

When on the stand, on March 23, 2023, K.C. said that she was 16, which would make her 14 at the time of the incident two years earlier on June 18, 2021. K.C. testified that she had snuck out of her house on that night, to be with her friend R.H. K.C. said that R.H. had a phone and contacted [Appellant] through the social media site "Snapchat" to set up a meeting between the three of them. K.C. described her encounter with [Appellant] in detail. K.C. said [Appellant] took them into his basement where he provided both of the underage girls with vodka. Then K.C. described that [Appellant] kissed and touched her inappropriately as follows:

> Q. Okay. And what happened besides him kissing you on your mouth?
> A. He put -- he put his finger in my bottom.
> Q. Okay. How did he get his hand in that location?
> A. He put it in my pants.
> Q. Do you need a tissue?
> A. (Non-verbal response.)
> Q. Okay. So you said he put his finger in your bottom. Do you mean in your butt?
> A. Yes.
> Q. Okay. And he did that because he put his hand down your pants?

A. Yes.

The second victim, R.H., corroborated K.C.'s testimony. R.H. testified on March 23, 2023 that she was 16, making her also age 14 at the time of the June 18, 2021 incident between her, K.C., and [Appellant]. R.H. testified that the plan was for her and K.C. to sneak out of their houses to meet [Appellant] so she contacted him on the social media platform called Snapchat. Once they went to [Appellant]'s house, R.H. said that he took them both to his basement and gave them straight vodka which she consumed about 5 glasses and K.C. consumed 3 or 4 glasses. R.H. then described the encounter she witnessed between K.C. and [Appellant]:

> Q. Did you ever see him ([Appellant]) on top of (K.C.) (name omitted)?
> A. No.
> Q. Okay. And what were they doing?
> A. He ([Appellant]) had his hands like down the back of her pants.
> Q. Okay.
> A. And they were making out.
> Q. Okay. Was he kissing her?
> A. Yeah.

R.H. further testified to [Appellant]'s actions toward her:

> Q. When you and he were making out, did that include him kissing you?
> A. Yeah.
> Q. What parts of your body was he kissing?
> A. Just my lips.
> Q. Your lips, okay. When he was behind you, did he put his arms around you?
> A. Yeah.
> Q. Did he put his hands anywhere in any part of your clothing?
> A. Yeah.
> Q. Where did he put his hands?
> A. Down my pants.
> Q. Okay. When he did that, did his hands make contact with your vaginal area or your vagina?
> A. Yes.

> Q. Did any part of his hand go inside or was it always on the outside?
> A. Inside.

Trooper Robert Ziobro testified that he interviewed both girls separately and they recounted the same scenarios. Trooper Ziobro further stated that when he interviewed [Appellant] the day after the incident, [Appellant] admitted he was with the girls the night before and he had been intoxicated. The Trooper relayed the following under oath:

> He ([Appellant]) said that he was very intoxicated and the night was a blur, could not recall. So I had asked him if he had any kind of sexual contact with either [K.C.] or [R.H.]. At first he ([Appellant]) denied it and then Trooper Magarelli, who was with me, started questioning him in regards to -- we want to hear the whole truth. The truth is what's going to help. So he ([Appellant]) admits to digitally--well, he first admits to putting his hands down the pants of [K.C.]. He ([Appellant]) couldn't recall if he digitally penetrated her or not. And then he ([Appellant]) did admit to digitally penetrating [R.H.] for a short period of time.

Trooper Daniel Magarelli, the assisting officer, testified that he was there when they interviewed [Appellant]. He said: "We explained -- I particularly remember explaining to him that he was not under arrest, that he didn't have to speak with us if he did not want to." Trooper Magarelli went on to say that despite [Appellant]'s initial denials, [Appellant] made admissions about his knowing the girls were coming over and when they arrived, he gave them vodka:

> Again, at first, I believe he denied providing them alcohol, but then told us specifically that he provided them with Tito's vodka. And they had consumed that the night before, I believe, it was. I also recall him saying that they connected somehow. When I say connected, I mean they communicated through a cell phone device or something like that, to get together. So they decided to do that.

Trooper Magarelli further said although [Appellant] at first he denied touching the girls, but then he ended up admitting to kissing at least one of the girls and that he "stuck his hand down

- 4 -

the front of her pants and touched her vagina" and that when he did these things, [Appellant] said he knew that the girls were age 14. Significantly, at the trial [Appellant] also admitted he met up with the 14 year old girls on the night of June 18, 2021, when [Appellant] was 25. On the stand, [Appellant]'s version of events was that K.C. and R.H. arrived at his door already intoxicated; he denied giving them any alcohol or molesting them. Notably, [Appellant] said when questioned by the police near the time of the incident, he never told the police his claim about the girls' sobriety.

Trial Court Opinion, 2/9/24, at 5-9 (record citations omitted).

The Commonwealth filed a ten-count information charging Appellant with five crimes against each victim: corruption of minors, selling or furnishing liquor to minors, aggravated indecent assault, indecent assault, and unlawful contact with a minor. A jury found Appellant guilty of all charges. On October, 30, 2023, the court imposed sentence. Appellant filed timely post-sentence motions challenging, *inter alia*, the weight of the evidence, but the court denied these motions. Appellant filed a timely notice of appeal, and both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises two issues in this appeal:

(1) Whether the evidence presented was sufficient to establish the elements of the crimes charged, and

(2) Whether the verdict as to all charges is against the weight of the evidence?

Appellant's Brief at 4.

In his first argument, Appellant contends that the evidence was insufficient to sustain his convictions. We disagree.

We apply the following standards to challenges to the sufficiency of the evidence:

> We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.
>
> The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact[-]finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

***Commonwealth v. Williams***, 302 A.3d 117, 120 (Pa. Super. 2023).

Section 6301 of the Crimes Code defines corruption of minors as follows:

> (1)(i) Except as provided in subparagraph (ii),[1] whoever, being of the age of 18 years and upwards, by any act corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of any crime, or who knowingly assists or encourages such minor in violating his or her parole or any order of court, commits a misdemeanor of the first degree.

18 Pa.C.S.A. § 6301(a)(1)(i). "Actions that tend to corrupt the morals of a minor are those that would offend the common sense of the community and

---

[1] Subparagraph (ii) upgrades the offense to a third-degree felony under certain circumstances. 18 Pa.C.S.A. § 6301(a)(1)(ii). Appellant was not found guilty under this subparagraph.

- 6 -

the sense of decency, propriety and morality which most people entertain." ***Commonwealth v. Sebolka***, 205 A.3d 329, 339 (Pa. Super. 2019).

Viewed in the light most favorable to the Commonwealth, the evidence demonstrates Appellant was 25 years old at the time of the incident with K.C. and R.H., who were 14 year old girls. Appellant admitted knowing that the girls were only 14. The girls' testimony, along with Appellant's interview with the police officers, demonstrates that Appellant gave the girls copious amounts of vodka, and after they became inebriated, he kissed and digitally penetrated K.C.'s anus and R.H.'s vagina. This conduct was clearly offensive to the common sense of the community and the sense of decency, propriety and morality that most people entertain. ***Sebolka***, ***supra***.

Appellant suggests that Appellant's confession was tainted because it was not recorded and because the troopers did not take contemporaneous notes of their conversation with Appellant. This argument only concerns the weight of the evidence, and as discussed above, we cannot reweigh the evidence in the course of reviewing challenges to the sufficiency of the evidence. Appellant further argues that the Commonwealth failed to offer corroborative evidence such as DNA, GPS, and text messages to substantiate the victims' allegations. This claim is unavailing because there is no requirement the Commonwealth present any form of physical or forensic evidence to support a conviction for corruption of minors. To the contrary, it is well settled that in prosecutions for corruption of minors, the uncorroborated testimony of the victim, if believed, is sufficient to support a conviction. ***See***

*Commonwealth v. Bourgeon,* 654 A.2d 555, 558-59 (Pa. Super. 1994) (testimony of 11 year old victim that defendant lured him into bathroom where he attempted to clip some manner of "pin toy" onto minor's penis was sufficient to support conviction for corruption of minors); *Commonwealth v. Stoner,* 425 A.2d 1145, 1147-48 (Pa. Super. 1981) (uncorroborated testimony of 12 year old child sufficient to support convictions not only of corruption of minors but also of statutory rape and involuntary deviate sexual intercourse).

Next, the Crimes Code defines the offense of selling or furnishing liquor or malt or brewed beverages to minors as follows, "Except as provided in subsection (b),[2] a person commits a misdemeanor of the third degree if he intentionally and knowingly sells or intentionally and knowingly furnishes, or purchases with the intent to sell or furnish, any liquor or malt or brewed beverages to a person who is less than 21 years of age." 18 Pa.C.S.A. § 6310.1(a). Here, the 14 year old victims, K.C. and R.H., snuck out of their homes and met with Appellant, who provided them with vodka. K.C.'s mother found K.C. intoxicated after the incident. Trooper Magarelli testified that Appellant admitted providing vodka to both minors. Viewed in the light most favorable to the Commonwealth, this evidence satisfies all elements of Section 6310.1(a).

_____

[2] Section 6310.1(b) creates an exception for providing wine to minors during religious services or ceremonies in private homes or places of worship. This exception does not apply to the present case.

- 8 -

Next, the Crimes Code provides that an individual commits aggravated indecent assault when he

> engages in penetration, however slight, of the genitals or anus of a complainant with a part of the person's body for any purpose other than good faith medical, hygienic or law enforcement procedures … if … the complainant is less than 16 years of age and the person is four or more years older than the complainant and the complainant and the person are not married to each other.

18 Pa.C.S.A. § 3125(a)(8). The evidence, construed in the light most favorable to the Commonwealth, establishes that Appellant, who was 25 years of age, digitally penetrated K.C.'s anus and R.H.'s vagina after he got the victims drunk. This evidence clearly satisfies the elements of aggravated indecent assault under Section 3125(a)(8).

> Next, an individual commits indecent assault when he
>
> has indecent contact with the complainant … for the purpose of arousing sexual desire in the person or the complainant … and … the complainant is less than 16 years of age and the person is four or more years older than the complainant and the complainant and the person are not married to each other.

18 Pa.C.S.A. § 3126(a)(8). The Crimes Code defines "indecent contact" as "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person." 18 Pa.C.S.A. § 3101. The evidence, viewed in the light most favorable to the Commonwealth, establishes that Appellant, who was 25 years of age, touched K.C.'s anus and R.H.'s vagina for the purpose of arousing or gratifying his

- 9 -

sexual desires. This evidence satisfies the elements of indecent assault under Section 3126(a)(8).

Finally, the Crimes Code defines the offense of unlawful contact with minor as follows:

> A person commits an offense if he is intentionally in contact with a minor … for the purpose of engaging in an activity prohibited under any of the following, and either the person initiating the contact or the person being contacted is within this Commonwealth:
>
> (1) Any of the offenses enumerated in Chapter 31 (relating to sexual offenses).[3]

18 Pa.C.S.A. § 6318(a)(1). Section 6318 defines "contacts" as

> Direct or indirect contact or communication by any means, method or device, including contact or communication in person or through an agent or agency, through any print medium, the mails, a common carrier or communication common carrier, any electronic communication system and any telecommunications, wire, computer or radio communications device or system.

18 Pa.C.S.A. § 6318(c). Section 6318 also defines "minor" as "an individual under 18 years of age." The evidence shows that R.H. had a phone and contacted Appellant through the social media site "Snapchat" to set up a meeting between the three of them. Moreover, Appellant admitted to Trooper Magarelli that he was in contact with the victims through a cell phone device.

---

[3] These offenses include two statutes which Appellant has been found guilty of committing, Sections 3125 (aggravated indecent assault) and 3126 (indecent assault).

Accordingly, the evidence is sufficient to sustain Appellant's convictions under Section 6318.

For these reasons, Appellant's challenge to the sufficiency of the evidence is devoid of merit.

In his second argument, Appellant contends that the verdict was against the weight of the evidence. The trial court properly rejected this claim.

A motion seeking a new trial based on the weight of the evidence is

> addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. It has often been stated that a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

>> Appellate review of a weight claim is a *review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.* Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Clay*, 64 A.3d 1049, 1054–55 (Pa. 2013) (citations and quotation marks omitted) (emphasis in the original).

The trial court reasoned:

[T]he jury, in ruling on [Appellant's] guilt or innocence in the charges, had the right to consider and believe all, part, or none of the evidence presented, as well as to determine the credibility of the witnesses. The jury concluded that [Appellant] was guilty of all 10 charges and met the elements of those crimes. The jury's verdict meets the criteria of both sufficiency and weight of evidence. [Appellant] has made no claim this court acted in a manner of partiality, prejudice, bias or ill will.

Trial Court Opinion, 2/9/24, at 14.

In our view, the trial court acted within its discretion by denying Appellant's challenge to the weight of the evidence. The jury observed testimony from both victims, K.C.'s mother, the investigating officers and Appellant himself. The testimony of the victims, K.C.'s mother and the investigating officers provided a sturdy foundation for the jury to determine that Appellant communicated with the victims in advance, met the victims at his house, plied them with vodka and sexually assaulted them. Although Appellant denied giving them vodka or assaulting them, the jury had the right to disbelieve him and to credit the testimony of the victims, K.C.'s mother and the officers. The trial court had the right to determine that the jury verdicts did not shock one's sense of justice.

For these reasons, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/10/2024